IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AVID CONTROLS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-01076 |
| | § | |
| GENERAL ELECTRIC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is a motion to dismiss filed by Defendants GE Energy Power Conversion Technology ("GE Power") and General Electric Company ("GE Company") (collectively the "GE Defendants"). (Doc. No. 50). Plaintiff Avid Controls, Inc. ("Avid") filed a response. (Doc. No. 51). The GE Defendants replied. (Doc. No. 54). Plaintiff filed a sur-reply. (Doc. No. 55).[1]

### I. Factual Background

This case arises out of a contract dispute. In September of 2017, Avid and GE Power entered into a Technology License and Product Sales Agreement (the "Agreement"). In relevant part, the Agreement granted Avid "a perpetual, exclusive, irrevocable, assignable (excluding Siemens and ABB to whom the license may not be assigned), unrestricted world-wide license to use, develop, manufacture, remanufacture, repair, market, sell, and support products incorporating the Technology or any part thereof including intellectual property rights." (Doc. 50-1 at 3). The term Technology refers to the MV3000, a low voltage power converter developed for use in various industries, and products incorporating the same.

---

[1] This filing was originally struck for failure to comply with this Court's local rules. *See* (Doc. No. 58). Avid has since been granted leave to file this sur-reply. *See* (Doc. No. 60).

1

Further, the First Amended Complaint ("FAC") alleges the "GE Defendants made clear through [their] agents and attorneys, including in-house legal counsel David Gaiser and several others that the license was to be exclusive only as to Avid." (Doc. No. 48 at 2). The conveyed exclusivity, Avid alleges, meant that "no other entity would be able to sell [the Technology] for 18 months after the contract was executed, and, more importantly, no other entity would be allowed to use, develop, manufacture, remanufacture, repair, market, sell, and support this technology." *Id.* Avid contends this supports an action against the GE Defendants for fraud.

The FAC further alleges that a year after the contract was signed, it came to Avid's attention that the GE Defendants committed a variety of acts purportedly in breach of the agreement. Among the purported breaches, Avid alleges that the GE Defendants permitted Avid's competitor to manufacture products using the MV3000 and continued manufacturing and selling products incorporating the MV3000 technology. Further, Avid contends, the GE Defendants have failed to satisfy provisions requiring the GE Defendants to provide Avid with certain technologies. Avid also contends this supports an action against the GE Defendants for fraud.

Finally, Avid alleges that GE Company should be liable for the acts of GE Power because GE Power is an alter ego of GE Company. In support of this, Plaintiff alleges that GE Company aided and abetted GE Power in the wrongful conduct, that the companies did not adhere to corporate formalities, and that GE Power breached the agreement for the benefit of GE Company and its shareholders.

## II. Standard of Review

A movant may file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To

defeat a motion to dismiss pursuant to Rule 12(b)(6), a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the nonmovant. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). In other words, Rule 9(b) requires a Plaintiff to plead "the who, what, when, where and how of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

### III. Discussion

#### A. Defendants' Motion to Dismiss Plaintiff's Fraud Claim

Plaintiff's FAC alleges in part that the GE Defendants should be held liable for fraud. In relevant part, the FAC alleges that, in the event the contract is not exclusive as the terms of the Agreement state (and as allegedly represented by the Defendants' agents), "GE committed fraud and lied to Avid by convincing Avid that it was exclusive." (Doc. No. 48 at 5). The GE Defendants moved to dismiss Plaintiff's fraud claim arguing that Plaintiff's claim is barred by the economic loss rule and that Plaintiff did not plead its action with the particularity required by Rule 9(b). Plaintiff disputes these two points.

As an initial matter, the scope of Plaintiff's fraud claim is subject to some conjecture. By the Court's reading, the Plaintiff is alleging that the GE Defendants committed fraud during the initial negotiations of the Agreement.[2] The Court notes that this action sounds more in fraudulent inducement. "Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). The economic-loss rule precludes "recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). Importantly, the Supreme

---

[2] The FAC is not a pinnacle of clarity on this point, and some may argue that this alone may provide sufficient reason to dismiss the fraud claim as Rule 9(b) requires a Plaintiff to plead "the who, what, *when*, where and how of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (emphasis added). Nevertheless, the Court will give Avid the benefit of the doubt here and take the most logical reading of the FAC (and the one put forward in both Plaintiff's Response and Sur-reply briefs). *See* (Doc. No. 51 at 23; Doc. No. 55 at 6).

4

Court of Texas has held that the economic-loss rule does not "extend…to a fraudulent inducement claim, even when the claimant suffered only economic losses to the subject of a contract." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011).

Avid's claim also passes scrutiny under Rule 9(b). As discussed above, Avid alleges that the GE Defendants committed fraud by representing that the contract would be exclusive when it was not. The Court notes that Avid's allegation differs from the normal allegations of fraudulent inducement where a party misrepresents the characteristics of an item they are selling. Instead, Avid is contending that the GE Defendants misrepresented the terms of a written commercial transaction by representing the contract was exclusive—and in fact using the term "exclusive" in the contract—while adding qualifying language that would lead a court to interpret the agreement to not, in fact, require exclusivity. Hypothetically, such a fraud claim could exist, but it would require an exceptional set of facts. Namely, a plaintiff would need to plead, not only that the contract was not exclusive, but also that the defendant knew that the contract would not be exclusive at the time the alleged representations were made. While Rule 9(b) permits knowledge to be alleged generally, the FAC does not contain any direct allegation that the GE Defendants knew that the contract was not exclusive when they entered into the deal. This element is at best implied in the FAC. Nevertheless, in the very motion the GE Defendants have filed seeking dismissal of the fraud claim, they impliedly concede that they did know at the time that the contract was not exclusive. In supporting their interpretation of the events, the GE Defendants argue:

> Avid's theory in this breach-of-contract case is that, in exchange for $450,000, GE Power Conversion effectively sold off an entire power conversion product line (without using purchase and sale language in the contract) and relinquished virtually all rights in its technology by giving Avid an exclusive license, which Avid claims is worth at least $38 million to date. ***What common sense suggests,***

5

> *the language of the contract confirms: GE Power Conversion agreed to no such thing.*

(Doc. No. 50 at 5–6) (emphasis added). Given this stance, the Court will not dismiss Plaintiff's fraudulent inducement claim for failure to directly plead the GE Defendants had knowledge of the alleged misrepresentation.

The GE Defendants also argue that Plaintiff failed to properly identify the who, when, and where of the alleged misrepresentation. The Court rejects these arguments, believing that under these limited circumstances the FAC sufficiently alleges that the misrepresentations were made by David Gaiser and perhaps others while negotiating the agreement. (Doc. No. 48 at 2). It may be correct that Plaintiff did not explicitly allege where the statements were made, nevertheless the Court believes that Plaintiff has plead sufficient facts to give the GE Defendants notice as to the substance of its fraudulent inducement claim.

In addition to the inducement claim, in various places Plaintiff suggests that the GE Defendants engaged in other actions that it alleges are wrongful or fraudulent. First, it alleges that the GE Defendants committed "fraud" by failing to turn over certain technology as allegedly required by the Agreement. Second, in its Response Brief, Plaintiff argues that the fraud has "continue[d] to this day as GE Defendants still falsely state that the license agreement is not exclusive." (Doc. No. 51 at 23). Neither of these purported fraud claims have been sufficiently pled in the FAC. Therefore, the Court finds these claims should be dismissed. To be clear, the only operative fraud claim surviving Defendants' motion to dismiss is Plaintiff's fraudulent inducement claim alleging that Defendants fraudulently misrepresented that the Agreement was exclusive. All other fraud claims either before or after the contract was executed are dismissed.

### B. Defendants' Motion to Dismiss Plaintiff's Breach of Contract Claim

Plaintiff filed its breach of contract claim against both GE Defendants. The GE Defendants moved to dismiss the breach of contract claim against GE Company because it is not a party to the contract. Despite lengthy responses to other arguments related to their breach of contract claim, Plaintiff has not responded to this core aspect of the Defendants' motion. This Court's Local Rules state that "[f]ailure to respond to a motion will be taken as a representation of no opposition." S. DIST. TEX. L.R. 7.3, 7.4; see also Hanen L.R. 7(D). Plaintiff's deadline to oppose Defendants' motion has passed with no response or requests for extensions filed by Plaintiff. Therefore, the local rules would allow the Court to grant Defendant's motion as it should be considered unopposed. However, the Fifth Circuit has explained that "although we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (citing *Johnson v. Louisiana*, 757 F.2d 698, 707–09 (5th Cir. 1985)); *Ramsey v. Signal Delivery Serv.*, 631 F.2d 1210, 1213–14 (5th Cir. 1980)). In other words, where a party does not respond to an aspect of a motion to dismiss, such failure does not warrant a severe measure, such as dismissal with prejudice. *Ramsey*, 631 F.2d at 1214. The Court will therefore turn to the merits of the Motion to Dismiss and Plaintiff's FAC.

Defendants' argument depends upon the terms of the Agreement. Plaintiff did not attach the Agreement to its FAC. Typically, "in deciding a motion to dismiss for failure to state a claim, if 'matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting FED. R. CIV. P. 12(b)). Nevertheless, "[d]ocuments that a

defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Here, the Agreement is at the very core of this lawsuit and is referenced *passim*. Therefore, the Court will consider the contract as part of the pleading here.

In relevant part, the contract states that it is an agreement "by and between GE Energy Power Conversion Technology Ltd, a UK company, a division of General Electric, a New York corporation ("Licensor"), and Avid Controls, Inc., a Texas Corporation ("Licensee")." (Doc. No. 50-1 at 2). No party has suggested that GE Power is not an independent company capable of being sued. Indeed, both parties appear to treat GE Company and GE Power as independent entities. Based on this and the language in the Agreement, the Court finds the GE Company is not a party to the Agreement and grants the GE Defendants' motion to dismiss the breach of contract claim against GE Company.

The core dispute in this litigation is the alleged breach of the Agreement by GE Power. The GE Defendants have also argued that this claim should be dismissed for failure to state a claim for breach of contract. The Court considers this issue to be more appropriately addressed in a summary judgment context, and therefore denies the remainder of the GE Defendants' motion to dismiss Plaintiff's breach of contract claims without prejudice to the GE Defendants' (or Plaintiff's) right to raise the same arguments at a later stage in the litigation.

### C. Defendants' Motion to Dismiss Plaintiff's Alter Ego and Joint and Several Liability Claims

In its FAC, Avid alleges that GE Company should be held liable for the acts of GE Power. "Texas law allows veil-piercing but only in limited circumstances." *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 832 F.3d 560, 566 (5th Cir. 2016). To pierce the corporate veil, a

8

plaintiff must show: "(1) that the persons or entities on whom he seeks to impose liability are alter egos of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, in satisfaction of the requirements of article 2.21—now Business Organizations Code section 21.223(a) and (b)." *Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 507 (Tex. App. [1st Dist.] 2012). In the context of a tort action, to prove the second element and disregard the corporate fiction, a Plaintiff must show: (1) the fiction is used as a means of perpetrating fraud; (2) a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) the corporate fiction is employed to achieve or perpetrate monopoly; (5) the corporate fiction is used to circumvent a statute; and (6) the corporate fiction is relied upon as a protection of crime or to justify wrong. *Id.* at 510. The standard is more stringent in the context of a breach of contract action. Under Texas Business Organizations Code Section 21.223(a), a contractual obligee must "demonstrate[] that the . . . beneficial owner . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the . . . beneficial owner." TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2). Actual fraud in this context requires "dishonesty of purpose or intent to deceive." *In re Ritz*, 832 F.3d at 567.

  Regardless of the standard applied here, Plaintiff has not sufficiently alleged facts supporting a claim that GE Company could be liable under an alter ego/veil piercing framework. In its FAC, Plaintiff alleges, in conclusory fashion, that GE Company aided and abetted GE Power in the wrongful conduct, that the companies did not adhere to corporate formalities, and that GE Power breached the agreement for the benefit of GE Company and its shareholders. None of these allegations, even if true, demonstrate any misuse of the corporate framework.

9

Avid has not alleged any facts that would give rise to an inference that Avid believed GE Company would be responsible for any breach of the agreement, nor have they alleged facts suggesting GE Power has been undercapitalized or that GE Company otherwise used the corporate framework to perpetrate a fraud or to avoid payment. *See Tycro Enterprises*, 390 S.W.3d 497 (veil-piercing permitted where, following a lawsuit but before collection of the judgment, owners transferred assets out of the company to avoid payment). As such, Plaintiff's alter ego claims are dismissed.

### IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. For clarity purposes, the Court reiterates that the following causes of action remain: a breach of contract claim against GE Power and a fraudulent inducement claim against both GE Defendants.

Signed this 29th day of January, 2020.

Andrew S. Hanen
United States District Judge